**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **INFINITY LABS, LLC** | * | Case No. _____ |
| 171 E. Krepps Road | | |
| Xenia, Ohio 45385 | * | Judge _____ |
| | | |
| -and- | * | |
| | | |
| **KENNETH EDGE, PH.D.** | * | |
| 171 E. Krepps Road | | |
| Xenia, Ohio 45385 | * | |
| | | |
| -and- | * | |
| | | |
| **JASON MOLNAR** | * | |
| 3095 Dale Avenue | | |
| Columbus, Ohio 43209 | * | |
| | | **COMPLAINT FOR DAMAGES,** |
| -and- | * | **INJUNCTIVE, AND OTHER** |
| | | **RELIEF** |
| **KURTIS GLENDENNING** | * | |
| 75 Lakin Court | | **JURY DEMAND** |
| Vandalia, Ohio 45377 | * | |
| | | |
| Plaintiffs, | * | |
| | | |
| -vs.- | * | |
| | | |
| **RADIANCE TECHNOLOGIES, INC.** | * | |
| c/o Curtis Rowland, Chief Strategy Officer | | |
| 3715 Pentagon Boulevard | * | |
| Beavercreek, Ohio 45431 | | |
| | * | |
| **ALSO SERVE**: | | |
| **RADIANCE TECHNOLOGIES, INC.** | * | |
| c/o Corporation Service Company, | | |
| Statutory Agent | * | |
| 50 West Broad, Street, Suite 1330 | | |
| Columbus, Ohio 43215 | * | |

1

-and-                                              *

**WILLIAM C. BAILEY, JR.**                         *
310 Bob Heath Drive
Huntsville, Alabama 35806                          *

    Defendants                  *

---

Now come Plaintiffs Infinity Labs, LLC, an Ohio limited liability company ("**Infinity**"), Kenneth Edge, Ph.D. ("**K. Edge**"), Jason Molnar ("**J. Molnar**"), and Kurtis Glendenning ("**K. Glendenning**," and together with Infinity, K. Edge, and J. Molnar, collectively, "**Plaintiffs**"), by and through their legal counsel, and for their complaint against Defendants Radiance Technologies, Inc. ("**Radiance**"), an Alabama corporation and William C. Bailey, Jr., an Alabama resident ("**W. Bailey**" and together with Radiance, collectively, "**Defendants**"), state as follows:

## PARTIES

1.      Plaintiff Infinity is, at all times relevant, an Ohio limited liability company, with a principal place of business at 171 E. Krepps Road, Xenia, Ohio 45385. All of the members of Infinity are residents of Ohio.

2.      Plaintiff K. Edge is, at all times relevant, an Ohio resident who resides at 171 E. Krepps Road, Xenia, Ohio 45385.

3.      Plaintiff J. Molnar is, at all times relevant, an Ohio resident who resides at 3095 Dale Avenue, Columbus, Ohio 43209.

4.      Plaintiff K. Glendenning is, at all times relevant, an Ohio resident who resides at 75 Lakin Court, Vandalia, Ohio 45377.

5.      Defendant Radiance is, at all times relevant, an Alabama corporation and citizen, with its principal place of business located at 310 Bob Heath Drive, Huntsville, Alabama 35806.

Radiance is qualified to do business as a foreign corporation in Ohio, with an office located at 3715 Pentagon Boulevard, Beavercreek, Ohio 45431.

6.     Upon information and belief, Defendant W. Bailey is, at all times relevant, an Alabama resident and citizen, and the Chief Executive Officer of Radiance.

## JURISDICTION AND VENUE

7.     Federal subject matter jurisdiction is based upon 28 U.S.C. § 1332(a) since there exists complete diversity among Plaintiffs and Defendants and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

8.     Defendants have significant contacts with this federal judicial district and therefore are subject to the personal jurisdiction of the Court in this district.  Specifically, a substantial part of the events or omissions giving rise to Plaintiffs' causes of action have occurred in this federal judicial district and therefore, pursuant to 28 U.S.C. § 1391(b) venue is proper in this Court.

## FACTUAL BACKGROUND

I.     **Employment at Radiance**.

9.     Radiance is a defense contractor with over 800 employees across the United States. Radiance primarily serves the Department of Defense, national intelligence community, and other governmental agencies.  K. Edge, J. Molnar, and K. Glendenning are all former employees of Radiance at its Ohio office located at 3715 Pentagon Boulevard, Beavercreek, Ohio 45431 (the "**Ohio Office**").

10.     At all times relevant, K. Edge was a Vice President in the Cyber Solutions Group for Radiance and led the Simulation and Exploitation Operation (the "**Operation**").  At all times relevant, J. Molnar and K. Glendenning worked under the leadership of K. Edge.  J. Molnar was a

Business Development Lead for the Operation, and K. Glendenning was a Project Manager for the Modeling and Simulation Division, a division of the Operation.

11. Under K. Edge's direction and leadership, the Operation flourished and grew at Radiance from approximately fifteen (15) employees to one hundred and five (105) employees by June 1, 2020.

12. On June 9, 2020, K. Edge learned from Ronnie Harrison, the Senior Vice President of the Cyber Solutions Group ("**R. Harrison**") that Radiance planned to conduct a total realignment of its workforce, which would result in the Operation being split-up and divided across the company. Radiance did not seek the input of K. Edge regarding the realignment of the Operation even though the restructuring would likely negatively and detrimentally impact the Operation that K. Edge had successfully built.

13. On June 12, 2020, K. Edge had a follow-up discussion with R. Harrison about the realignment, but R. Harrison could not provide K. Edge with any information regarding what his new position would be at Radiance. On June 19, 2020, K. Edge talked on the phone with Rita Hill, the current Executive Vice President – National Security Sector ("**R. Hill**") regarding the realignment. R. Hill offered to K. Edge that he could lead the Cyber group. However, this new role for the Cyber group would be a fraction of his prior role and responsibilities for the Operation. As such, K. Edge was told that he would likely go from overseeing one hundred and five (105) employees to approximately twenty-five (25) employees.

14. Due to Radiance's realignment and after discussions with Radiance's leadership, it became clear that K. Edge would no longer be the lead of the Operation (to the extent that it continued to exist), and J. Molnar and K. Glendenning would likely no longer be working under K. Edge's leadership and direction.

4

15.     Due to the restructuring at Radiance coupled with the uncertainty of each of their continued roles at Radiance, on Saturday, June 20, 2020 K. Edge, J. Molnar, K. Glendenning and others met and decided to leave their employment at Radiance.

16.     On the morning of Monday, June 22, 2020, K. Edge gave his two weeks' resignation notice to Radiance at the Ohio Office by providing telephonic notice to R. Harrison. Shortly after giving his resignation, K. Edge was escorted out of the Ohio Office by Curt Rowland, Chief Strategy Officer at Radiance ("**C. Rowland**") and R. Hill.  K. Edge was not even permitted to retrieve his personal belongings prior to being escorted out of the Ohio Office.

17.     On the morning of Monday June 22, 2020, K. Glendenning also gave his two weeks' resignation notice to Radiance at the Ohio Office by providing telephonic notice to R. Harrison.

18.     On the morning of Tuesday, June 23, 2020, K. Glendenning was working on his Radiance issued laptop (the "**Glendenning Laptop**") at the Ohio Office to transition his responsibilities to other project managers at Radiance.  Due to the nature of his work, the Glendenning Laptop had confidential government owned and controlled data that is subject to specific governmental regulations and reporting requirements.  At all times that K. Glendenning was working on the Glendenning Laptop, it was functioning perfectly and had an encased hard-drive.

19.     While he was working in the afternoon on that same day, K. Glendenning was called into a meeting with Radiance's former President David Diaddario ("**D. Diaddario**").  K. Glendenning left the Glendenning Laptop on, locked, and in working condition in his office and went into the meeting with D. Diaddario.  D. Diaddario gave K. Glendenning an ultimatum to either revoke his resignation and stay at Radiance or leave immediately.  K. Glendenning declined

to continue to work at Radiance and was immediately escorted out of the Ohio Office. At that time, K. Glendenning was not permitted to retrieve his personal belongings. K. Glendenning never saw the Glendenning Laptop after he left it in his office to go into his meeting with D. Diaddario.

20. Due to his involuntary departure from the Ohio Office, K. Glendenning relinquished custody and control of the Glendenning Laptop to Radiance. Based upon Radiance's representations in the Alabama Litigation (as defined herein), Radiance failed to keep a chain of custody and control of the Glendenning Laptop, which resulted in Radiance losing confidential, proprietary governmental information. The failure to keep control and possession of the Glendenning Laptop and the accusations now being made in the Alabama Litigation against K. Glendenning and Plaintiffs have detrimentally impacted them.

21. On the morning of June 29, 2020, which was J. Molnar's first day after returning from vacation, J. Molnar gave resignation notice to Radiance at the Ohio Office by providing notice to Radiance's representatives. Shortly after giving his notice, J. Molnar was escorted out of the Ohio Office.

22. Neither K. Edge, J. Molnar, or K. Glendenning had non-compete or non-solicitation agreements with Radiance. Further, it is common knowledge in the defense industry that employees often transition from one governmental contractor to another, which makes the enforcement of such agreements challenging.

## II.    **Infinity Labs**.

23. Infinity was initially formed with the Ohio Secretary of State on June 13, 2020 by K. Edge. K. Edge initially formed Infinity as a potential consulting company.

24.     After K. Edge, J. Molnar, K. Glendenning, and others decided to cease their employment with Radiance, they made the decision to form their own company and utilize the Infinity name for this new company.

25.     The members of Infinity signed organizational documents and commenced operations on July 6, 2020.

26.     In its first start-up year, Infinity has enjoyed a degree of success and grown from seven (7) employees to approximately twenty-five (25) employees.

27.     Due to its size, Infinity has been able to capture a market and obtain awards, among other things, under Small Business Innovation Research ("**SBIR**") programs.  Given its size, Radiance is too large to compete for these SBIR programs.

III.    **Radiance's Unjustified Actions**.

28.     Within days of K. Edge and K. Glendenning giving notice of resignation from Radiance, Radiance's leadership indicated to current employees of Radiance that they planned to sue K. Edge, K. Glendenning, and others for leaving Radiance's employment.

29.     Upon information and belief, Radiance took possession of the Glendenning Laptop and the computers of K. Edge, J. Molnar, and others to forensically examine them to "find something, anything so we can use it later."  Unfortunately, it is apparent that Radiance failed to maintain proper protocols regarding the chain of custody as it relates to these computers, which is reflected in the public debacle set forth in the Alabama Litigation (as defined herein) surrounding the Glendenning Laptop.

30.     Shortly after K. Edge's, J. Molnar's, and K. Glendenning's departure from Radiance, W. Bailey came to Ohio and had an "all-call" with Radiance's employees at Radiance's Ohio Office.  At this meeting, W. Bailey openly and publicly disparaged Infinity and alleged,

without any evidence, that Infinity was deliberately attempting to steal work that was developed by Radiance.

31.     After Infinity commenced its business operations in July of 2020, Radiance has continued to take steps to publicly defame and detrimentally impact the start-up business from being able to succeed with third-party contractors and governmental agencies (collectively, the "**Contractors**").

32.     As only one example, Infinity was given a teaming agreement with one of its Contractors, a prime contractor, in the defense industry to assist in bidding on a large effort in Ohio.  Shortly before fully executing the teaming agreement, Infinity was told that the prime contractor was withdrawing the teaming agreement but would not provide an explanation to Infinity.

33.     Later, Infinity learned that Radiance, upon information and belief at the direction of W. Bailey, used Radiance's leverage with the prime contractor to mandate that Infinity not be part of the large effort.  As a direct result of Radiance's conduct, Infinity lost potential revenue of over Five Million Dollars ($5,000,000), lost profits, the opportunity to gain additional work with the prime contractor, and the loss of publicity that a win on such an effort would provide the small start-up company.

34.     Upon information and belief, Radiance has continued to disparage and defame Infinity among the Contractors in an attempt to stifle any competition.

35.     Further, while Infinity's team has been executing on various governmental programs that both Infinity and Radiance are supporting through different contract vehicles, Radiance, upon information and belief at the direction of W. Bailey, has unjustifiably contacted Infinity's government customer falsely claiming that Infinity was not performing at the level that

the program needed for success. This was an intentional, deliberate attempt by Radiance to disrupt and destroy Infinity's contractual relations with its customer.

36.     Infinity has been approached over the last year by Radiance employees about coming to work for Infinity. These employees have been told defaming and disparaging statements by Radiance's leadership about Infinity, upon information and belief at the direction of W. Bailey. By way of example, these employees have been falsely told that Infinity is not paying its employees timely and could not meet its payment obligations. Infinity's leadership has also heard false allegations from current Radiance executives that Infinity was not able to pay its obligations.

**IV.     Radiance's Sham Lawsuit in Alabama**.

37.     On May 20, 2021, despite the fact that there is no relation to the State of Alabama and Plaintiffs, Radiance commenced a lawsuit in the Circuit Court of Madison County, Alabama captioned as *Radiance Technologies, Inc. v. Ken Edge, Jason Molnar, Kurtis Glendenning and Infinity Labs, LLC,* Case Number 47-CV-2021-900633.00 (the "**Alabama Litigation**"). A true and accurate copy of the Complaint is attached hereto as **Exhibit 1**, and is incorporated herein by this reference.

38.     In the Alabama Litigation, Radiance asserted claims that alleged "defamatory statements" had been made by K. Edge and J. Molnar. However, Radiance does not provide any specificity with regard to what alleged defamatory statements have allegedly been made. (Compl. at ¶ 17.) Furthermore, Radiance asserts that "Edge, Molnar and Infinity have failed and refused to retract their false and defamatory statements." (Id. at ¶ 26.) However, to date, Plaintiffs have never been contacted by Radiance requesting a retraction of such alleged defamatory statements.

39.     Radiance further alleged in the Alabama Litigation that K. Edge and Infinity committed conversion and breach of K. Edge's fiduciary duty by "downloading" Radiance's

9

confidential information, including salary information, within two weeks prior to his resignation. (Id. at ¶ 14.)  However, the Complaint fails to mention that, as has been the custom and practice for years, K. Edge only downloaded this information onto a Radiance issued laptop, which was subsequently returned to Radiance on June 22, 2020.  Additionally, it was regularly part of K. Edge's job duties to download this information that he received via email correspondence or via Radiance's internal network from Radiance's leadership and corporate offices to review. Ostensibly, Radiance did not employ the proper chain of custody with regard to K. Edge's Radiance-issued laptop that was returned to Radiance on June 22, 2020.

40.     The most troubling, frivolous allegation in the Alabama Litigation is against K. Glendenning and Infinity for conversion and breach of K. Glendenning's fiduciary duty due to his failure to return the "hard drive" of the Glendenning Laptop.  Specifically, Radiance alleges in the Alabama Litigation as follows:

> When Glendenning resigned from Radiance in the summer of 2020, he returned his company-issued laptop; however, he had removed the hard drive from it.  Because Glendenning used the laptop extensively in his work for Radiance, and because his role with Radiance as a project manager, Radiance believes and asserts that the said laptop contains significant amounts of confidential and proprietary Radiance business information. Such information could and would be valuable and useful to a Radiance competitor such as Infinity, particularly in Glendenning's position with Infinity as Chief Products Officer.  Glendenning's actions were and are contrary to Radiance company policy and applicable law.

(Id. at ¶ 15.)

41.     As set forth herein, the Glendenning Laptop was left turned on and locked by K. Glendenning in his office on June 23, 2020, with an encased hard drive.  The Glendenning Laptop contains government-owned controlled data, and is governed by specific regulatory handling requirements.  If the Glendenning Laptop was indeed missing its hard drive, Radiance would have had to report this to the appropriate government agencies and the Department of Defense within

seventy-two (72) hours of discovering that this information was missing. K. Glendenning would have then likely been questioned by the appropriate authorities regarding the alleged missing hard drive – which he has not. To Plaintiffs' knowledge, Radiance has never reported this alleged missing confidential information to the appropriate government agencies and the Department of Defense.

42.     Since June 23, 2020, aside from the allegations made in the Alabama Litigation, Radiance never contacted K. Glendenning or Infinity about an alleged missing hard drive to the Glendenning Laptop. There are serious and detrimental ramifications to K. Glendenning and Infinity of making such false statements by Radiance in the publicly available Alabama Litigation. These unfounded statements implicate K. Glendenning's government security clearance, his ability to continue to work in the government defense sector, and the ability of Infinity to continue to work in the defense industry. These statements appear to be an ill-conceived attempt by Radiance to destroy Infinity and K. Glendenning in an attempt to try to destroy a small, perceived competitor and prevent fair competition. Such defamatory conduct by Radiance is not supported by Ohio law.

43.     In an attempt to destroy Plaintiffs, Radiance commenced the Alabama Lawsuit in Madison County, Alabama. K. Edge, J. Molnar and K. Glendenning have collectively been to Alabama one time since June of 2020. While Infinity has qualified as a foreign limited liability company in Alabama, it maintains no place of business in Alabama. It merely has one employee located in the state. Despite these facts, Radiance commenced the Alabama Lawsuit in an improper attempt to litigate against a competitor on its home turf.

11

44. Due to a complete lack of personal jurisdiction, Plaintiffs intend to remove the Alabama Litigation to the United States District Court for the Northern District of Alabama, and seek the transfer of the Alabama Litigation to this Court, and consolidation with this action.

## COUNT I
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP (DAMAGES)

45. Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

46. Infinity has business relationships with the Contractors to collaborate and work on certain governmental programs.

47. Defendants have actual knowledge of the business relationship between Infinity and these Contractors.

48. Defendants have and continue to intentionally and tortiously interfere with the business relationships between Infinity and the Contractors, which has led to the breach or termination of at least one of these business relationships, without valid justification or privilege.

49. Infinity has or will sustain damages, in an amount to be determined at trial, as a direct and proximate result of the Defendants' tortious interference with the business relationship between the Plaintiffs and the Contractors. Because the Defendants' wrongful interference was done with malice and/or with a conscious disregard for Infinity's rights, Infinity requests compensatory and punitive damages in an amount to be determined at trial, but greater than $75,000.00, and reasonable attorneys' fees and costs.

## COUNT II
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP (INJUNCTIVE RELIEF)

50. Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

51.     Defendants have tortiously, willfully, and maliciously interfered with the business relations that Infinity has with its Contractors, without any justifiable excuse and in bad faith.

52.     Unless restrained and enjoined, Defendants' acts will cause ongoing irreparable harm, damage, and injury to Infinity for which there is no adequate remedy at law.

53.     Therefore, Infinity requests that the Court issue a preliminary and permanent injunction against Defendants prohibiting them from interfering with Infinity's business relations with the Contractors.

<u>**COUNT III**</u>
<u>**TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP**</u>
<u>**(DAMAGES)**</u>

54.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

55.     Infinity has contractual relationships with the Contractors to collaborate and work on certain governmental programs.

56.     Defendants have actual knowledge of the contracts between Infinity and these Contractors.

57.     Defendants have and continue to intentionally and tortiously interfere with the contracts between Infinity and the Contractors, which may lead to the unjustified termination of the contracts.

58.     Infinity has or will sustain damages, in an amount to be determined at trial, as a direct and proximate result of the Defendants' tortious interference with the contracts between the Plaintiffs and the Contractors.  Because the Defendants' wrongful interference was done with malice and/or with a conscious disregard for Infinity's rights, Infinity requests compensatory and

punitive damages in an amount to be determined at trial, but greater than $75,000.00, and reasonable attorneys' fees.

## COUNT IV
## TORTIOUS INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP
## (INJUNCTIVE RELIEF)

59.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

60.     Defendants have tortiously, willfully, and maliciously interfered with the contractual obligations that Infinity has with its Contractors, without any justifiable excuse and in bad faith.

61.     Unless restrained and enjoined, Defendants' acts will cause ongoing irreparable harm, damage, and injury to Infinity for which there is no adequate remedy at law.

62.     Therefore, Infinity requests that the Court issue a preliminary and permanent injunction against Defendants prohibiting them from interfering with Infinity's contractual relations with its Contractors.

## COUNT V
## FALSE OR DECEPTIVE TRADE PRACTICES (DAMAGES)

63.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

64.     Defendants have disparaged the services and business of Infinity by making false statements about Infinity to certain third parties, including without limitation, the Contractors.

65.     As such, Defendants have violated the Ohio Deceptive Trade Practices Act under Ohio Revised Code Section 4165, *et seq.*

66.     As a result, Plaintiffs have been damaged by Defendants' violations of the Ohio Deceptive Trade Practices Act in an amount to be determined at trial, but greater than $75,000.00.

## COUNT VI
## FALSE OR DECEPTIVE TRADE PRACTICES (INJUNCTIVE RELIEF)

67.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

68.     Defendants have disparaged the services and business of Infinity by making false statements about Infinity to certain third parties, including without limitation, the Contractors.

69.     As such, Defendants have violated the Ohio Deceptive Trade Practices Act under Ohio Revised Code Section 4165, *et seq.*

70.     As a result, the Court should issue a preliminary and permanent injunction against Defendants prohibiting them from disparaging the services and business of Infinity to certain third parties, including without limitation, the Contractors.

## COUNT VII
## UNFAIR COMPETITION

71.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

72.     Defendants have made fraudulent representations and rumors to harm the business operations of Infinity.

73.     Defendants filed the sham Alabama Litigation, which was objectively baseless, with a subjective intent to injure the ability of Infinity to conduct its business operations and fairly compete against Radiance for business.

74.     As a result, Plaintiffs have been damaged by Defendants in an amount to be determined at trial, but greater than $75,000.00.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY BY RADIANCE AS TO K. GLENDENNING

75.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

76.     Radiance, as the former employer of K. Glendenning, owed K. Glendenning the duties of loyalty, good faith, and care.

77.     As such, when K. Glendenning left the Glendenning Laptop in his office, in a Radiance controlled environment, on June 23, 2020 and was subsequently escorted out of the Ohio Office, Radiance had a fiduciary duty to maintain proper custody and control of the Glendenning Laptop, and to diligently investigate in good faith all facts before accusing K. Glendenning of conversion.

78.     Radiance breached its fiduciary duty to K. Glendenning by failing to keep custody and control of the Glendenning Laptop that was returned to its custody and control at the Ohio Office upon K. Glendenning's involuntary departure or to diligently investigate, in good faith, all facts before accusing K. Glendenning of conversion.

79.     As a result, Plaintiff K. Glendenning has been damaged by the breach of Radiance's fiduciary duty in an amount to be determined at trial, but greater than $75,000.00.

## COUNT IX
## BREACH OF FIDUCIARY DUTY AS TO K. EDGE

80.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

81.     Radiance, as the former employer of K. Edge, owed K. Edge the duties of loyalty, good faith, and care

82.     As such, when K. Edge left his computer at Radiance on June 22, 2020, Radiance had a fiduciary duty to maintain proper custody and control of his computer equipment, and to diligently investigate, in good faith, all facts before accusing K. Edge of conversion.

16

83.     Upon information and belief, Radiance breached its fiduciary duty to K. Edge by failing to keep custody and control of his computer and its data that was returned to its custody and control at the Ohio Office upon K. Edge's involuntary departure, or to diligently investigate, in good faith, all facts before accusing K. Edge of conversion.

84.     As a result, Plaintiff K. Edge has been damaged by the breach of Radiance's fiduciary duty in an amount to be determined at trial, but greater than $75,000.00.

**COUNT X**
**DEFAMATION**

85.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

86.     Defendants, or third parties acting as their agents, caused to be published either in emails or by spoken word certain statements which were false in nature about Infinity.

87.     These statements include but are not limited to representations that Infinity cannot pay its employees or its obligations, and that Plaintiffs have stolen work that was developed at Radiance.

88.     The statements made by the Defendants, or third parties acting on their behalf, are knowingly false, malicious, and untrue.

89.     These statements have exposed Infinity to injury to its reputations and has adversely affected its business and trade.

90.     As a result of said statements, Infinity been damaged in an amount to be determined at trial, but greater than $75,000.00.

## COUNT XI
## ABUSE OF PROCESS

91.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

92.    Defendant Radiance commenced the Alabama Litigation with an ulterior motive to destroy Plaintiffs' reputation and business.

93.    The Alabama Litigation has been perverted to attempt to accomplish this ulterior purpose for which it was not designed.

94.    As a result, Plaintiffs have been damaged in an amount to be determined at trial, but greater than $75,000.00.

## COUNT XII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

95.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully rewritten herein.

96.    By Defendants' unlawful conduct and frivolous filing of the Alabama Litigation, including without limitation the claims against K. Edge, J. Molnar, and K. Glendenning, Defendants intended to cause K. Edge, J. Molnar, and K. Glendenning serious emotional distress.

97.    Defendants' conduct was extreme and outrageous and not supported under applicable law.

98.    Defendants' conduct was the proximate cause of K. Edge's, J. Molnar's, and K. Glendenning's serious emotional distress.

99.    As a result, K. Edge, J. Molnar, and K. Glendenning have been damaged in an amount to be determined at trial, but greater than $75,000.00.

**WHEREFORE**, Plaintiffs Infinity Labs, LLC, Kenneth Edge, Ph.D., Jason Molnar, and Kurtis Glendenning demand judgment as follows:

A.    As to Count One, Count Three, Count Five, Count Seven, and Count Ten, judgment in favor of Infinity and against Defendants, jointly and severally, in an amount to be determined at trial;

B.    As to Count Two, Count Four, and Count Six, judgment in favor of Infinity for a preliminary and permanent injunction preventing the Defendants, jointly and severally, from further interfering, negotiating, contacting, or otherwise communicating directly or indirectly with the Contractors regarding Infinity; and

C.    As to Count Eight, judgment in favor of K. Glendenning and against Defendants, jointly and severally, in an amount to be determined at trial;

D.    As to Count Nine, judgment in favor of K. Edge and against Defendants, jointly and severally, in an amount to be determined at trial;

E.    As to Count Eleven, judgment in favor of Plaintiffs and against Defendants, jointly and severally, in an amount to be determined at trial;

F.    As to Count Twelve, judgment in favor of K. Edge, J. Molnar, and K. Glendenning and against Defendants, jointly and severally, in an amount to be determined at trial;

G. The award of compensatory and punitive damages in favor of Plaintiffs against Defendants, jointly and severally;

H. Court costs, expenses, and reasonable attorney fees to the extent permitted by law; and

I. For such other relief, both legal and equitable, which this Court may deem appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

/s/ Tami Hart Kirby
Tami Hart Kirby, Esq. (#0078473)
Walter Reynolds, Esq.  (#0022991)
Emma M. Walton, Esq. (#0100024)
Porter Wright Morris & Arthur LLP
One South Main Street, Suite 1600
Dayton, Ohio  454022028
Telephone:  (937) 449-6721
Facsimile:  (937) 449-6820
E-mail: tkirby@porterwright.com
E-mail: wreynolds@porterwright.com
E-mail: ewalton@porterwright.com

*Attorneys for Plaintiffs Infinity Labs, LLC, Kenneth Edge, Ph.D., Jason Molnar, and Kurtis Glendenning*

14621035

21